IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

JOSEPH KENNETH ARNOLD,        §
TDCJ #284250,                 §
                              §
            Plaintiff,        §
                              §
v.                            §        CIVIL ACTION NO. G-05-0536
                              §
KENNETH NEGENEBOR, *et al.*,  §
                              §
            Defendants.       §

## MEMORANDUM AND ORDER

State inmate Joseph Kenneth Arnold (TDCJ #284250) has filed this lawsuit under 42

U.S.C. § 1983, alleging violations of his civil rights.  Arnold proceeds *pro se* and he has been

granted leave to proceed *in forma pauperis*.  Arnold has filed a supplemental memorandum

along with his complaint.  (Doc. # 1).  At the Court's request, Arnold has also provided a

more definite statement of his claims, to which he attaches numerous exhibits.  (Docs. # 19,

# 20).  Two of the defendants have filed a joint motion for summary judgment.  (Doc. # 36).

Arnold has filed a response.  (Doc. # 43). After reviewing all of the pleadings, and the

applicable law, the Court grants summary judgment in favor of the defendants and dismisses

this case for reasons that follow.[1]

---

[1]     On October 25, 2007, this case was reassigned to United States District Judge Melinda
Harmon pursuant to General Order 2007-10.  The case is being handled by the undersigned
by agreement of the judges.

## I.   <u>BACKGROUND</u>

Arnold is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"), at the Ramsey I Unit in Rosharon, Texas. He is currently serving a life sentence that he received in 1978. *See Arnold v. Cockrell*, 306 F.3d 277 (5th Cir. 2002). Arnold was convicted of aggravated kidnapping in that case. Arnold discloses that, prior to his conviction for aggravated kidnapping, he had two prior felony convictions for kidnapping and for assault with intent to rape.

Arnold sues several officers and officials employed by TDCJ at the Ramsey II Unit, where Arnold was formerly assigned, including Law Library Supervisor Rebecca L. Delgado and Sergeant Walter C. Ward. Arnold's complaint stems from a routine shake-down, in which he reportedly lost some of his personal property.

Arnold explains that, on or about November 19, 2004, there was a routine shake-down at the Ramsey II Unit. Arnold was told to take all of his personal property to the gymnasium to be searched. Arnold concedes that he had a lot of property — more than he could carry with ease. So that he could transport all of his personal property to the gymnasium, Arnold states that he took all of his legal work out of the "legal box" provided by TDCJ officials to house designated legal materials. Arnold then placed his legal work in the same bag as his "non-legal" personal property. When Arnold arrived at the gymnasium, he was told that his legal work must be kept in his legal box pursuant to prison rules on the storage of such property. Arnold complained that he was unable to carry his legal box because it was too heavy. Officer Carsandra Teague, who is also named as a defendant in this case, informed

2

Arnold that if he did not place his legal work in his designated legal box, then his excess property would be confiscated.

According to the record, several books were confiscated from among Arnold's personal property during the shake-down. Arnold complains that additional items of his legal and personal property were wrongfully taken and destroyed by Officer Teague. Arnold contends that his personal property was confiscated pursuant to Administrative Directive 03.72 without due process. Arnold claims that items of legal and personal property were stolen in retaliation because of his Muslim faith and his status as a writ writer. Arnold contends further that, by confiscating his legal property, the defendants violated his right to access the courts. Arnold also claims that the taking of his property violated the Religious Land Use and Institutionalized Persons Act (the "RLUIPA"), 42 U.S.C. § 2000cc-1.

Arnold blames Officer Teague for taking and destroying his personal property. Arnold complains that Sergeant Ward and Law Library Supervisor Delgado, who were present during the shake-down, ignored his complaints about Officer Teague's actions and failed to intervene on his behalf, resulting in the violation of his constitutional and statutory rights. Arnold seeks compensatory and punitive damages from all of the defendants for violation of his constitutional and federal statutory rights. Supervisor Delgado and Sergeant Ward have filed a joint motion for summary judgment, arguing that Arnold is not entitled to relief. The parties' contentions are addressed below under the governing standard of review.

## II.  <u>STANDARD OF REVIEW</u>

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances.  Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief").  The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

The defendants have filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law.  Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en

banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the non-movant's case.  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not

6

defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *See id.* (internal citations and quotations omitted).  Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## III.   **DISCUSSION**

The defendants argue that Arnold's claims lack merit and that he fails to establish a constitutional or statutory violation.  Because Arnold fails to demonstrate a valid claim, the defendants argue further that they are entitled to qualified immunity from suit in their personal or individual capacity.  The defendants' arguments are addressed in turn.

### A.    **Loss of Personal Property**

As noted above, Arnold's primary complaint is that items of his personal property were wrongfully taken during a routine shake-down in November of 2004.  Arnold complains that his personal property was confiscated pursuant to Administrative Directive 03.72 without due process.  Arnold claims further that items of his property, including legal

documents and other personal items, were taken and destroyed in retaliation for his religious beliefs and his status as a writ writer.  The defendants dispute that Arnold's property was confiscated without due process or that it was wrongfully destroyed.  Arnold's allegation that his property was wrongfully confiscated without due process, and his allegation that items of his property were taken and destroyed with retaliatory malice, are addressed separately below.

### 1.    Wrongfully Confiscated Property

Because he is a prison inmate, Arnold has no legally protected interest in the possession of personal property as a general matter.  In that respect, it is well settled in this Circuit that prison officials may impose reasonable restrictions on the type and amount of personal property that inmates are allowed to possess while in prison.  *See McRae v. Hankins*, 720 F.2d 863, 869 (5th Cir. 1983) (citing *Sullivan v. Ford*, 609 F.2d 197 (5th Cir. 1980)); *Long v. Collins*, 917 F.2d 3, 4 (5th Cir. 1990).  To the extent that Texas prisoners have a right to possess personal belongings, the deprivation of property implicates the Constitution only if such deprivation is accomplished without due process.  *Parratt v. Taylor*, 451 U.S. 527, 537 (1981).  When deprivation of property is occasioned by an official policy, an inmate must be afforded some combination of notice prior to the deprivation and an opportunity to be heard.  *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

The defendants maintain that Arnold had excessive property that was not properly stored and that, as a result, it was confiscated in compliance with prison policy with the requisite due process.  TDCJ has a policy that governs "Offender Personal Property and

8

Confiscation and Disposal of Contraband." (Administrative Directive ["AD"] 03.72). Under this policy, items which are unauthorized or which fall within the definition of contraband are subject to confiscation and may be seized by staff. AD 03.72(XI)(A). TDCJ also has a policy governing the proper storage of legal materials. The TDCJ Access-To-Courts policy allows prisoners to keep legal materials in their cells if the materials are stored properly in a designated legal box. (Doc. # 36, Exhibit, Subsequent Storage and Written Contraband, ATC-03.81.040). Because of security issues and constraints on space, prisoners must qualify to have a legal box under the policy by verifying a "legal need" for the materials. (*Id.*). If necessary, a prisoner may also qualify for an additional legal box, depending on his ability to "articulate, verify, and justify his legal need" for the extra storage compartment. (*Id.*). Items that are inappropriately stored, or excessive amounts of property, may be confiscated and taken to the property room for disposition. (*Id.*).

In an affidavit to the Court, Supervisor Delgado explains that Arnold arrived at the shake-down with excess property that would not fit within his designated legal box and was not stored in compliance with TDCJ rules:

> On November 19, 2004, the Ramsey II Unit . . . was on lockdown pending the annual unit shakedown and search. On that date, I was in charge of shaking down and searching legal boxes of offenders to ensure compliance with TDCJ policies and procedures and prevent contraband. When I approached Offender Arnold and opened his legal box, I discovered that it was empty. When I asked Offender Arnold where his legal materials were that belonged in his legal box, he told me that he packed it in his personal property bags. I informed Arnold that, pursuant to TDCJ policy, all legal property must be kept in his legal box and instructed him to put the property back in the legal box so that I could continue my duties and search the box.

At that time Offender Arnold put one bag of materials into his legal box. After I began shaking down that material, Arnold brought two more bags of property that he claimed were legal materials. I informed him that my only duties were to search the materials inside the legal boxes and another officer informed Arnold that all excessive materials that did not fit into his legal box would have to be sent home or destroyed.

After Arnold requested a second legal box and was found not to qualify for one pursuant to [TDCJ Policy] AM 034.81.040.III.A, I advised Offender Arnold that his property could be sent home through the indigent supply program. If any of Arnold's legal property was destroyed, it was because Arnold chose not to send it home and pursuant to policy, all excessive property must be sent home or destroyed.

(Doc. # 37, Exhibit C, Affidavit of Rebecca Delgado).[2]  Both Delgado and Sergeant Ward, who has also provided an affidavit in this case, specifically deny taking or destroying any of Arnold's legal or personal property in violation of prison policy.  (Doc. # 36, Exhibit A, Affidavit of Walter Ward).

The record supports the defendants' account that Arnold had excess property that was improperly stored and therefore subject to confiscation pursuant to prison policy.  (Doc. # 36, Exhibit, Step 1 Grievance, #2005061026).  The record also reflects that Arnold had ample notice and an opportunity to be heard.  In the grievance that he filed to contest the confiscation, Arnold concedes that he was told that he could send his excess property home. (*Id.*).  The record shows that Arnold received two forms notifying him that several books were confiscated as "improperly stored" and because there were questions about his

---

[2]     In a supplement to their summary judgment motion, the defendants provide a signed affidavit from Rebecca Delgado under her married name, Rebecca Rodas.  (Doc. # 37, Exhibit C, Affidavit of Rebecca Rodas).  For the sake of clarity and consistency, the Court will continue to refer to her as Rebecca Delgado for purposes of this case.

ownership of the items.  (Doc. # 20, Exhibit K).[3]  The forms afforded Arnold notice that he could challenge the confiscation and seek the return of his property.  (*Id.*).  The forms also advised Arnold that he could dispose of the property by mailing the items to an approved person on his visitor list or by giving the items to an approved visitor at the time of a visit. (*Id.*).

The record reflects that Arnold took advantage of the opportunity to challenge the confiscation of this property and the destruction of his excess legal documents.   An investigation of Arnold's claims revealed that he did not qualify for an additional legal box to store his excess property in compliance with the prison Access-To-Courts policy.  (Doc. # 36, Exhibit, Interoffice Communication, Dec. 9, 2004).  The investigation also revealed that Arnold did not comply with prison rules by sending his excess property home, as directed. (*Id.*).  Records reflect that Arnold refused to provide a name and address to have the property sent to his home.  (Doc. # 36, Exhibit, Grievance Investigation Worksheet, Jan. 12, 2005). Ultimately,  the  grievance  investigator  found  that  Arnold's  property  was  appropriately confiscated pursuant to AD 03.72 and that there was no staff misconduct involved.  (*Id.*).

---

[3]     Neither the pleadings nor the forms give exact titles for the books that were seized. According to the forms, the following books were confiscated because there were questions about whether Arnold owned the materials, including:  a thesaurus, a dictionary, a paralegal study guide, a book on drugs, to public laws (Public Law No. 104-132 and Public Law No. 104-134), and another paralegal book.  (Doc. # 20, Exhibit K).  Four other books were also confiscated during the shake-down for being improperly stored, including: a book entitled "99 Days to Get Out," an AA book, a "pill book," and a book on "intimidation and violence."  (*Id.*).

Arnold does not dispute that he received notice that his excess property was subject to confiscation and that he was given an opportunity to send the materials home at no cost to him through the prison indigent supply system. The grievance investigation reflects that Arnold had an opportunity to challenge the confiscation of his property and that prison officials investigated his claims, finding no wrongdoing on the part of prison staff members involved in the shake-down. Arnold does not raise a genuine issue of material fact showing that he was denied adequate notice or an opportunity to be heard. It follows that he fails to demonstrate that his property was confiscated in violation of due process.

### 2.      Property Taken and Destroyed in Retaliation

Arnold also complains that items of legal and personal property were stolen during the shake-down and destroyed by Officer Teague for retaliatory reasons because of his status as a writ writer and because of his Muslim faith.[4] Arnold complains further that Supervisor Delgado and Sergeant Ward conspired with Officer Teague, or failed to intervene on his behalf, with the "theft" and destruction of his property. (Doc. # 1, Complaint; Doc. # 36,

---

[4]     According to the complaint, the stolen materials include his biological father's military records from the Korean War, his address book, his "Hepatitis C papers" and medical records, and documents from an unidentified federal case from the United States District Court for the Southern District of Texas. (Doc. # 1). The grievance filed by Arnold to address the confiscation makes no mention of the personal items that he claims were taken, referencing only unspecified legal documents and medical records. (Doc. # 36, Exhibit 2, Step 1 Grievance #2005061026). Although Arnold claims in his January 2008 More Definite Statement to have lost his copy of the Qu'ran, a prayer rug, and a "kufi" hat (Doc. # 19, at 5) during the November 2004 shake-down, neither the original complaint nor his grievance make any mention of these items.

Exhibit 2, Step 2 Grievance #2005061026).   Thus, Arnold complains that his legal documents and personal items were taken and destroyed in an unauthorized manner.

Arnold's substantive claim of retaliation is addressed further below.  However, to the extent that Arnold complains that his property was wrongfully taken as the result of random and unauthorized acts by prison officials, his claims are barred by the *Parratt/Hudson* doctrine.  *See Hudson v. Palmer*, 468 U.S. 517, 534 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). According to this doctrine, a negligent, or even intentional, deprivation of property by state officials that is random and unauthorized does not rise to the level of a constitutional violation or a cognizable claim under 42 U.S.C. § 1983 if state law provides an adequate post-deprivation remedy.  *See Hudson*, 468 U.S. at 533-34; *see also Stotter v. University of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (explaining the *Parratt/Hudson* doctrine).  It is well established that Texas provides a remedy for inmates whose property has been taken or destroyed in an unauthorized manner.  *See Myers v. Klevenhagen*, 97 F.3d 91, 95 (5th Cir. 1996); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984); *Aguilar v. Chastain*, 923 S.W.2d 740, 743-44 (Tex. Crim. App. 1996); *see also* TEX. GOV'T CODE §§ 501.007, 501.008.

To the extent that Arnold complains that his property was wrongfully taken and destroyed in a manner that was not sanctioned by prison policy, his claim has no basis in federal law because Texas provides an adequate post-deprivation remedy.  *See Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994).  Therefore, Arnold does not articulate an

actionable claim for which relief can be granted under 42 U.S.C. § 1983. *See id.*; *see also Leggett v. Williams*, 277 F. App'x 498, 500, 2008 WL 1984271 (5th Cir. 2008) (holding that the plaintiff's claim that his property was confiscated and destroyed as an act of retaliation for his status as a writ writer was barred by the *Parratt/Hudson* doctrine). Because Arnold has failed to raise a genuine issue of fact showing that his property was confiscated in violation of the constitution, the defendants are entitled to summary judgment on his claim concerning the loss of his property.

### B.    Access to Courts

Arnold contends that, because some of his legal property was confiscated during the November 2004 shake-down, the defendants violated his right to access the courts. In his complaint, Arnold contends that he was denied the ability to file a motion for an extension of time to file a petition for discretionary review in the Texas Court of Criminal Appeals in one of his habeas corpus proceedings. In his more definite statement, Arnold explains that he was attempting to challenge his first, second, and third convictions for aggravated kidnapping, kidnapping, and assault with intent to commit rape. (Doc. # 19, at 9). Arnold claims further that the confiscation somehow caused the Brazoria County District Clerk's Office to reject a civil complaint that he filed in March of 2005. (*Id.*). The defendants dispute that Arnold was denied access to courts.

The constitutional right implicated by Arnold's allegations is the right to access the courts that is generally protected by the First Amendment, the Due Process Clause, and the Equal Protection Clause. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002)

14

(collecting cases that demonstrate the "unsettled . . . basis of the constitutional right of access to courts"). Prisoners clearly have a constitutionally protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)). However, the right of access for prisoners is not unlimited. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997)). The right encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement. *See Jones*, 188 F.3d at 325 (citing *Lewis*, 518 U.S. at 351). In that regard, inmates are "not guarantee[d] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355. Instead, they are guaranteed "the conferral of a capability — the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id*.

According to the complaint, the only legal paperwork that was confiscated or destroyed during the November 2004 shake-down related to a federal case from the United States District Court for the Southern District of Texas. (Doc. # 1). Court records reflect, however, that Arnold did not have any cases pending in federal court at the time of the shake-

15

down in November of 2004.[5]  Thus, he fails to show that the loss of these legal papers denied

him access to the courts.

Arnold does not otherwise allege facts showing that the defendants intentionally

denied him the opportunity to file a non-frivolous claim or that his ability to pursue a valid

case was hindered in any way.  To establish a denial of access to the courts, a prisoner must

demonstrate "actual injury." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citing

*Lewis*, 518 U.S. at 351-54); *see also Christopher*, 536 U.S. at 415 (emphasizing that the right

of access to courts is "ancillary to the underlying claim, without which a plaintiff cannot have

suffered injury by being shut out of court.").  In other words, to prevail, Arnold must

establish that "his position as a litigant was prejudiced by his denial of access to the courts."

*McDonald v. Stewart*, 132 F.3d 225, 231  (5th Cir. 1998).

As noted above, all of Arnold's underlying criminal convictions were entered prior

to 1979.  Although Arnold claims that he was trying to challenge all three of his underlying

convictions, he provided no information in response to the Court's order for a more definite

statement, asking him to detail the basic claims that he attempted to raise in the cases that he

was working on at the time his property was confiscated.  (Doc. # 19, at 10).  Likewise, he

---

[5]     Court records reflect that Arnold has filed the following cases in federal court: *Arnold v. Director*, Civil No. 6:02-0093 (E.D. Tex.) (dismissed on April 3, 2002); *Arnold v. Scott*, Civil No. H-95-5814 (S.D. Tex.) (dismissed on February 26, 1998); *Arnold v. Lynaugh*, Civil No. 6:91-0059 (E.D. Tex.) (dismissed December 13, 1991); *Arnold v. Savage*, Civil No. 6:79-0326 (E.D. Tex.) (dismissed April 5, 1988).  Arnold attempted to intervene in another case, *Allen, et al. v. Johnson et al.*, Civil No. G-03-0998 (S.D. Tex.), but his motion for leave to join that case was denied on July 20, 2004.  Arnold also attempted to intervene in *Ickstadt, et al. v. Johnson*, Civil No. H-02-1064 (S.D. Tex.), but his motion for leave to intervene was denied on March 31, 2004.

provides no information about the civil case that he allegedly attempted to file in Brazoria County and he does not provide any facts explaining how the shake-down that occurred in November of 2004, prevented him from filing a proper complaint in March of 2005.

Arnold's conclusory allegations do not demonstrate that he has been denied the right to bring a non-frivolous claim concerning his underlying convictions, his sentence, or the conditions of his confinement. Absent a showing that Arnold was denied the ability to bring a non-frivolous claim, he fails to establish that any of the defendants improperly interfered with his constitutional right of access to courts. *See Jones*, 188 F.3d at 325. Accordingly, the defendants' motion for summary judgment on this issue is granted.

### C.      Retaliation

As referenced above in connection with Arnold's claims concerning the theft of his property, Arnold alleges that Officer Teague destroyed his legal and personal property in retaliation because of his status as a writ writer and his religious faith. Arnold also claims Sergeant Ward and Supervisor Delgado conspired to retaliate against him by ignoring his complaints about Officer Teague. The defendants deny that any retaliation occurred.

It is well established that a prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct. *See Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995)). A prisoner's personal belief that retaliation must have been the reason for the adverse action is insufficient to state a valid claim under 42 U.S.C. § 1983. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "To prevail on a claim of retaliation, a

prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). "Causation requires a showing that but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.* (internal quotation marks and citations omitted).

Both Supervisor Delgado and Sergeant Ward have provided affidavits, explaining that the November 2004 shake-down was routine in nature and that all inmates were subject to having their property searched for contraband and for compliance with prison rules on the storage of property. (Doc. # 36, Exhibit A; Doc. # 37, Exhibit C). Likewise, both Delgado and Ward deny any motive to retaliate against Arnold. (*Id.*).

Arnold does not dispute that the shake-down was routine and he does not otherwise show that he was singled out for improper treatment. Arnold fails to provide any direct evidence of retaliatory motive on the part of any of the defendants as to any of his property. He further fails to allege a chronology of events from which retaliation could be plausibly inferred. In that regard, although Arnold claims to be a writ writer, he provides no facts explaining why any of the defendants would retaliate against him as a result of his writ writing activities. Likewise, he fails to allege any facts explaining how his religious beliefs made him the target of retaliatory animus on the defendants' part. Arnold's conclusory allegation that his property was taken for retaliatory reasons is not sufficient to withstand a proper motion for summary judgment. *See Woods*, 60 F.3d at 1166; *see also Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (explaining that a prisoner must allege more

18

than mere subjective beliefs that a defendant retaliated against him).  Therefore, Arnold does

not raise a genuine issue of fact showing that the defendants had the requisite retaliatory

motive.  Absent a showing that the defendants had a reason to retaliate against him, Arnold

fails to demonstrate a valid claim for retaliation and the defendants are entitled to summary

judgment on this issue.[6]

### D.    Arnold's RLUIPA Claim

Arnold complains further that, by confiscating his personal property, the defendants

violated the Religious Land Use and Institutionalized Persons Act (the "RLUIPA"), 42

U.S.C. § 2000cc-1.  In relevant part, the RLUIPA states as follows:

> (a)  General Rule.  No government shall impose a substantial burden on
> the religious exercise of a person residing in or confined to an
> institution . . . even if the burden results from a rule of general applicability,
> unless the government demonstrates that imposition of the burden on that
> person —

> (1) is in furtherance of a compelling governmental interest; and

> (2) is the least restrictive means of furthering that compelling
> governmental interest.

---

[6]    The defendants argue, in the alternative, that the loss of property referenced by Arnold fails
to demonstrate a retaliatory adverse act that was-more-than-*de minimis*.  To establish a
constitutional violation, an inmate's retaliation claim must allege adverse acts that "would
chill or silence a person of ordinary firmness from future First Amendment activities."
*Morris v. Powell*, 449 F.3d 682, 685-86 (5th Cir. 2006) (quoting *Crawford-El v. Britton*, 93
F.3d 813, 826 (D.C. Cir. 1996) (en banc), *vacated on other grounds*, 523 U.S. 574 (1998)).
This standard recognizes that "some acts, though perhaps motivated by retaliatory intent, are
so *de minimis* that they would not deter the ordinary person from further exercise of his
rights." *Id.* at 686.  Such *de minimis* acts "do not rise to the level of constitutional violations
and cannot form the basis of a § 1983 claim." *Id.*  Arnold does not establish that his property
was confiscated without due process.  The Court does not reach this argument.

42 U.S.C. § 2000cc-1(a). The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* at § 2000cc-5(7). A government action or regulation creates a "substantial burden" on a religious exercise "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). "[T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs." *Id.* By contrast, "a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Id.*

The plaintiff bears the burden to present prima facie evidence of a substantial burden on a religious exercise. *See Mayfield v. Texas Dep't of Crim. Justice*, 529 F.3d 599, 613 (5th Cir. 2008). Arnold does not allege or show that any of the books or materials confiscated by prison officials during the shake-down were religious in nature. In that respect, neither the list of confiscated books, nor the grievance that Arnold filed following the shake-down identify any religious items that were seized or otherwise taken. (Doc. # 20, Exhibit K; Doc. # 36, Exhibit B, Step 1 & 2 Grievance #2005061026). Accordingly, Arnold fails to

demonstrate that any of his personal property was confiscated in violation of the RLUIPA.[7]

The defendants note further that Arnold cannot recover compensatory damages for violations of the RLUIPA because 42 U.S.C. § 1997e(e) precludes claims for monetary damages absent a physical injury. *See Mayfield*, 529 F.3d at 606 (citing *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005)). Because Arnold does not establish that any religious items were confiscated pursuant to prison policy, or provide specific facts showing that the confiscation resulted in a substantial burden on his religious faith, he further fails to show that he is entitled to injunctive relief. *See Mayfield*, 529 F.3d at 612-14 (concluding that summary judgment was proper on a TDCJ inmate's RLUIPA claim because he had not established that the complained of policy imposed a substantial burden on his exercise of religion). Absent a demonstration that prison officials substantially burdened the exercise of Arnold's religious beliefs, the defendants are entitled to summary judgment on this issue.

### E.    Qualified Immunity

Supervisor Delgado and Sergeant Ward argue that Arnold has failed to establish a constitutional violation and that, even assuming that such a violation occurred, they are entitled to qualified immunity from his claims against them. Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "The doctrine of

---

[7]    To the extent that Arnold complains that religious materials were taken and destroyed by Officer Teague in an unauthorized manner, his claim is not actionable for reasons outlined above under the *Parratt/Hudson* doctrine.

qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions." *Cozzo v. Tangipahoa Parish Council – President Gov't,* 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.,* 245 F.3d 447, 456 (5th Cir. 2001)). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, the Court must conduct a bifurcated analysis. *See, e.g., Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004). The threshold question has two parts. The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Scott v. Harris*, — U.S. —, —, 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). If the defendants' actions violated a clearly established constitutional right, the final step of the analysis asks whether qualified immunity is appropriate, nevertheless, because the defendants' "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537 (citations omitted).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). An official need only plead

his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id*. The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*.

At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity analysis overlaps substantially with the defendants' contention that Arnold's allegations lack merit.   For reasons discussed in more detail above, Arnold has not raised a genuine issue of material fact about whether any of the defendants, much less Sergeant Ward or Supervisor Delgado, committed a constitutional violation

Because Arnold has failed to establish a constitutional violation, the Court need not proceed to the final step of the qualified immunity analysis.  *See Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007).  Nevertheless, Sergeant Ward and Supervisor Delgado argue that, even if a violation occurred, they are entitled to qualified immunity from suit because they acted in good faith and their conduct was objectively reasonable under the circumstances.  (Doc. # 36, Exhibit A, Affidavit of Walter Ward; Doc. # 37, Exhibit C, Affidavit of Rebecca Delgado).  To avoid summary judgment on the defendants' qualified immunity defense, a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them*."  *Lampkin v. City of Nacogdoches*,

23

7 F.3d 430, 435 (5th Cir. 1993) (emphasis added).  If reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity. *See Malley*, 475 U.S. at 341.  "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).

Where qualified immunity is asserted, Arnold, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them.  *See Michalik*, 422 F.3d at 262.  Arnold has filed a response to the summary judgment motion, but his pleadings do not overcome the defendants' assertion of qualified immunity.  As outlined above, there is no evidence that Arnold's property was taken without due process or, to the extent his property was taken by Officer Teague, that Ward or Delgado had any personal involvement with the alleged wrongful destruction of his legal and personal property.  Likewise, Arnold has failed to show that he was denied access to courts or that the defendants retaliated against him in violation of his constitutional rights, and Arnold has likewise failed to articulate a violation of the RLUIPA.  Arnold's unsupported allegations do not raise a genuine issue of material fact on whether any of the actions taken by Sergeant Ward or Supervisor Delgado were unreasonable under the circumstances and they are not sufficient to overcome the defendants' assertion of

qualified immunity in this instance.  The Court concludes, therefore, that summary judgment on the defendants' assertion of qualified immunity is warranted.

### F.    Remaining Defendants

In addition to Sergeant Ward and Supervisor Delgado, the Court requested an answer from Officer Carsandra Teague.  (Doc. # 21).  Officer Teague has not filed an answer and the Attorney General's Office advises that she no longer works for TDCJ.  (Doc. # 25).  The Court attempted service of process at Officer Teague's last known address, but those efforts have been unfruitful.  (Docs. # 30, # 34).  The Fifth Circuit has recognized, however, that when one defending party establishes that the plaintiff has no cause of action, as Ward and Delgado have in this case, this defense generally inures also to the benefit of other similarly situated defendants.  *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (quoting *United States v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967) (citations omitted)).  For reasons discussed in more detail above, the Court has been able to resolve all of the plaintiff's claims based on the motion filed by Sergeant Ward and Supervisor Delgado. Therefore, the Court dismisses Arnold's claims against Officer Teague under 28 U.S.C. § 1915(e)(2)(B) as without an arguable basis in law.

In addition, Arnold also sues Former Warden Kenneth Negenebor, Former Warden Diana Kukua, Former Law Library Supervisor Ida Washington, Brazoria County District Clerk Jerry Deere, and TDCJ Executive Director Brad Livingston.  The Court did not request an answer from these defendants because, based on a review of the complaint and the more definite statement of his claims, Arnold fails to allege specific facts showing that these

supervisory officials had the requisite personal involvement in a constitutional violation. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)).  For these reasons, the claims against the remaining defendants are dismissed for failure to state a claim upon which relief can be granted.

IV.     **CONCLUSION AND ORDER**

Based on the foregoing, the Court **ORDERS** as follows:

1.       The defendants' motion for summary judgment (Doc. # 36) is **GRANTED**.

2.       The complaint in this case is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED on  October 28th , 2008.

Nancy F. Atlas
United States District Judge